UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INGRID & ISABEL, LLC,

Plaintiff,

v.

BABY BE MINE, LLC, et al.,

Defendants.

Case No.  13-cv-01806-JCS

**ORDER RE MOTION FOR SANCTIONS**

Re: Dkt. No. 50

## I.   INTRODUCTION

This case arises out of Defendants' alleged breach of two separate settlement agreements relating to Defendants' Belly Band product.  Presently before the Court is Plaintiff's Motion for Sanctions Against Defendants for Failing to Comply with Court Order ("Motion").  A hearing on the Motion was held on Friday, March 21, 2014 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.   BACKGROUND

### A.   Procedural Background

In 2006, Plaintiff filed suit in this Court asserting trademark infringement and unfair competition claims against Defendants based on allegations that Defendants' Belly Band was confusingly similar to Plaintiff's Bella Band product and Bella Band marks.  That case ended when the parties entered into a settlement agreement ("the Trademark Settlement Agreement").  In 2008, Plaintiff filed an action in this Court asserting claims of patent infringement and unfair competition against the same Defendants.  That case ended when the parties entered into another

---

[1] The parties have consented to the jurisdiction of the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c).

settlement agreement ("the Patent Settlement Agreement").  In this action, Plaintiff alleges that Defendants have breached both settlement agreements by, *inter alia,* selling and advertising a maternity band that holds up pants or skirts.

On October 4, 2013, after two extensions of the deadline to respond, Defendants produced their first responses to Plaintiff's document requests.  Declaration of Ilene H. Goldberg in Support of Plaintiff Ingrid & Isabel, LLC's Motion for Sanctions ("Goldberg Decl.") ¶ 3. Plaintiff asserted Defendants' responses were insufficient and the parties met and conferred but were unable to resolve their disputes.  *Id*. ¶¶ 3-5.  On December 3, 2013, Defendants' counsel sent Plaintiff's counsel an email stating, "[y]ou have received everything that my clients say they have that would be responsive to any of the document requests."  *Id*. ¶ 7 & Ex. H.  Subsequently, the parties submitted a joint letter to the Court setting forth their discovery disputes.  On December 20, 2013, the Court issued an order requiring that:

> (1) Defendants shall produce all documents referring or relating to customer comments or complaints on Belly Band products to the extent that they are responsive to Categories 10, 11, 15, 17, and 54; Defendants shall provide a declaration that (a) details the methods used to search for such documents and (b) states that no further documents were found other than those produced; (2) Defendants shall produce all documents responsive to Category 49; Defendants shall provide a declaration that (a) details the methods used to search for such documents and (b) states that no further documents were found other than those produced; and (3) Defendants shall not be ordered to produce documents requested by any of the other categories.

Docket No. 37 ("December 20 Order").  The Court further ordered that "Defendants shall make the necessary productions and provide the necessary declarations within thirty days of this Order."

On January 21, 2014, Defendant Helen Tekce, who jointly manages Baby Be Mine, LLC ("BBM") with Defendant Isabelle Gartner, submitted a declaration describing the efforts Defendants had made to comply with the Court's order.  Docket No. 44 ("Tekce January 21 Decl.").  In the declaration, Tekce states that: 1) Gartner was in Germany between December 15, 2013 and January 8, 2014; 2) Tekce was in England between December 20, 2013 and January 3, 2014; and 3) Defendants began their efforts to comply with the Court's order after Gartner and Tekce returned from Europe.  *Id*. ¶ 3. As of January 21, 2014, the date they were to have complied

United States District Court
Northern District of California

with the Court's order, Gartner and Tekce had determined that they "need[ed] to retain a computer expert to assist [them]" in retrieving communications from customers on the BBM website.  *Id*.  Defendants stated, "[w]e will produce all relevant documents that the computer expert might locate."  *Id*. ¶ 3(l).  In the declaration, Tekce also described efforts relating to the other customer comments and financial documents that the Court had ordered produced.  *Id*. ¶¶ 3-4.

On January 23, 2014, Defendants retained Kevin Andle, of We Care Computers, LLC, to restore deleted emails from two of their computers.  Declaration of Kevin Andle in Opposition to Plaintiff's Motion for Sanctions ("Andle Decl.") ¶ 2.  On February 4, 2014, Defendants' counsel sent an email to Plaintiff's counsel stating:  "Last week our clients retained a computer expert and the expert was able to locate additional documents.  We will produce them once Denise Bate stamps them."  Declaration of Peter W. Craigie in Support of Defendants' Opposition to Plaintiff's Motion for Sanctions ("Craigie Decl.") ¶ 3 & Ex. B.  Denise is the legal assistant to Robert Levin, who represents Defendants but is not counsel of record in this case.  *Id*.  According to Craigie, Denise had difficulty Bates stamping the documents because she was out sick with pneumonia, so on February 18, 2014, he forwarded the new documents to Plaintiff without the Bates stamps.  *Id*. ¶ 3.  A few days later, on February 21, 2014, Defendants produced 948 of the documents – now with Bates stamps – to Plaintiff .  *Id*.  Another 88 Bates-stamped documents were produced on February 24, 2014.  *Id*.   Defendants produced additional financial documents on February 28, 2014.  Declaration of Ilene H. Goldberg in Support of Plaintiff Ingrid & Isabel, LLC's Motion for Sanctions (Docket No. 62) ("Goldberg Reply Decl.") ¶ 9 & Ex. B.

In the meantime, on February 10, 2014, Plaintiff filed the instant Motion.  In the Motion, Plaintiff asserted that: 1) Defendants had not produced *all* documents responsive to the requests listed in the Court's December 20 Order; and 2) the declaration provided by Defendants was not sufficiently detailed in describing how Defendants searched for responsive documents, making it impossible to determine whether their efforts were reasonable and diligent.  Motion at 3-4.  Plaintiff asked the Court to impose sanctions, including: 1) an award of attorneys' fees and costs incurred as a result of Defendants' failure to comply with the Court's order; and 2) an order requiring that Defendants disclose all of their hard drives and provide Plaintiff with access to their

1   Amazon Seller account and all of their email accounts.  Motion at 14.  In addition, Plaintiff asked

2   the Court to prohibit Defendants from opposing Plaintiff's claims that Defendants' Belly Band

3   product holds up skirts and jeans, from opposing Plaintiff's damages calculation, and from

4   introducing any opposing evidence with respect to the damages calculation in this case.  *Id.*

5           In their Opposition, Defendants argue that the imposition of sanctions is not justified

6   because they have made diligent efforts to comply with the Court's order and have not acted in

7   bad faith.  Opposition at 1-3.  Defendants also provide a supplemental declaration by Tekce

8   providing additional details regarding the specific efforts Defendants had made to comply with the

9   Court's order.  *See* Supplemental Declaration of Helen Tekce in Opposition to Plaintiff's Motion

10  for Sanctions ("Tekce Supp. Decl.").

11          In its Reply, Plaintiff argues that Defendants' efforts with regard to the production of

12  documents required under the December 20 Order continue to be inadequate and that "critical

13  evidence" – including customer comments lost as a result of third-party document retention

14  policies, handwritten comments sent to BBM, and Belly Bands that were returned to BBM as

15  defective – has been destroyed as a result.  Reply at 4.  Plaintiff asserts it has been prejudiced not

16  only by Defendants' failure to produce important evidence but also by the late production of the

17  evidence.  *Id.* at 7-8.   In particular, because the documents were produced only a few days prior to

18  several scheduled depositions in Connecticut, Plaintiff's counsel was unable to adequately prepare

19  for the depositions and will need to return to Connecticut to complete them.[2]  Goldberg Reply

20  Decl., ¶¶ 4-9.  Plaintiff's counsel asserts that this prejudice was compounded by Defendants'

21  improper designation of some of the new documents as Attorneys' Eyes Only and their initial

22  refusal to remove these designations, which prevented Plaintiff's counsel from reviewing these

23  documents with their client prior to the depositions.  *Id.* ¶¶ 4-7.  According to Plaintiff's counsel,

24  Defendants did not agree to remove the improper Attorneys' Eyes Only designations until they

25  arrived at the depositions.  *Id.* ¶ 7.

26          Plaintiff continues to seek the sanctions requested in the Motion, as well as additional

27  ────────────────

28  [2] In fact, as noted above, some of the documents were not produced until February 24, 2014 – the day of one of the depositions – and others were not produced until after the depositions.

United States District Court
Northern District of California

monetary sanctions to cover the fees and costs associated with returning to Connecticut to complete depositions and for filing the Reply brief and appearing at the Motion hearing.  *Id*. ¶¶ 31-32.  Plaintiff also seeks to recover fees and costs incurred in subpoenaing documents directly from BBM's third-party vendors.  *Id*. ¶ 30.  Finally, Plaintiff asks the Court to order, in addition to the relief described above, that Defendants "make a full and complete production of requested documents (including all customs documents)."  Reply at 10.

**B.    Specific Disputes**

Plaintiff points to numerous areas in which it contends Defendants have failed to produce evidence and documents responsive to their requests. A summary of the main disputes as to this evidence is provided below.

**1. Documents on Defendants' Computers**

- **email communications between Defendants and their customers stored on Defendants' computers**:

At the time the Motion was filed, Defendants had not produced any email communications between Defendants and their customers.  Goldberg Decl. ¶ 9. Tekce testified at her January 20, 2014 deposition that Defendants deleted emails from customers after issues were resolved. *Id*., Ex. K at 46-47.  Similarly, she stated in her supplemental declaration that BBM routinely deletes emails due to the volume of email that it receives.  Tekce Supp. Decl., ¶ 21.  However, she also stated that Defendants had "not deleted any relevant emails since the inception of this lawsuit last year." *Id*. ¶ 21.  In contrast, Defendants' office manager, Michele Klimczak, testified at her February 26, 2014 deposition that only in the last three months (that is, sometime in late November 2013) had she been instructed to save emails; moreover, she had forgotten these instructions until she was asked about it at her deposition and had continued to delete emails from customers.  Goldberg Reply Decl., Ex. C at 56-57.  After Defendants retained Kevin Andle (in late January 2014), they produced some email communications that had been deleted.  Tekce Supp. Decl., ¶ 1.[3]  According to Tekce, she, Gartner and Klimscak spent "weeks" going through

---

[3] Tekce states that the computer specialist not only searched for emails that had been deleted from the two computers but that he also "pulled all emails that he could from the server."  Tekce Supp.

United States District Court
Northern District of California

1    "thousands of emails" to determine which ones were relevant to Plaintiff's requests, *id*. ¶ 4, but

2    Klimscak testified at her deposition that she has never reviewed any emails.  Goldberg Reply

3    Decl., ¶ 20 & Ex. C at 49-51. Plaintiff asserts it cannot be sure it received all relevant email

4    communications because: 1) Kevin Andle only searched two of Defendants' five computers and it

5    is not even clear which two computers he searched;[4] 2) Defendants used only a narrow set of

6    search terms which would not have turned up all responsive communications[5]; and 3) several

7    email addresses used by Defendants were not searched at all.[6]

8         • **financial documents on Defendants' computers**

9         In her motion declaration, Plaintiff's counsel stated that Defendants had only produced "a

10   smattering of incomplete invoices."  Goldberg Decl. ¶ 9(i).  According to Plaintiff, "Defendants

11   are missing in their production approximately 100 invoices from 2009, 120 invoices from 2010,

12   200 invoices from 2011, 870 invoices from 2012, and 900 invoices from 2013."  *Id*.  In response,

13   _____

14   Decl. ¶ 1.  According to Tekce, because Andle pulled emails from the server, his search of two of
     Defendants' computers actually amounted to searching all five computers "as far back as
15   technically possible."  *Id*. Andle, however, states only that he recovered deleted emails from the
     two computers he searched.  Andle Decl. ¶ 2.  There is no indication that Andle pulled any emails
16   from Defendants' server, or even that he was asked to do so.  Indeed, Defendants' counsel
     stipulated at the motion hearing that Andle *did not* pull emails from the server (or attempt to do
17   so).  Tekce appears to have simply made this statement up.
         [4] In her supplemental declaration, Tekce describes the five computers that Defendants have
18   in their possession – two at Tekce's home, two at the BBM warehouse and one at Gartner's home
     (a new computer as her old computer was destroyed in a fire).  Tekce Supp. Decl. ¶ 1.  Tekce says
19   that one of the computers at the warehouse was her old computer. *Id*.  According to Tekce, one of
     those computers was used for invoicing and both were used for printing labels.  *Id*.  Tekce also
20   says that the forensic expert examined two computers.  *Id*.  It does not appear that these were the
     same two computers discussed by Tekce, however.  Rather, the computer expert states that he
21   examined one computer located at Tekce's home and another computer located at the warehouse.
     *See* Andle Decl. ¶ 2.
22       [5] According to Tekce, the following search terms were used:  photoshoot, photography, angela
     morris, belly band, Aynur, Shea Long, Rachel Florio.  Tekce Supp. Decl. ¶ 5. Plaintiff points out
23   that Defendants did not search using "names of manufacturers, vendors, agents, fabric
     composition and suppliers."  Reply at 4.
24   [6]Tekce states that the forensic expert they retained was asked to search for deleted emails to and
     from sales@babybeminematernity.com and Michele@babybeminematernity.com.  *Id*.  According
25   to Tekce, "[t]hese two email addresses are the only two used to communicate with manufacturers,
     customers and vendors that would have emails pertaining to the belly bands."  *Id*.  She states that
26   helent@tconnections.com is her own personal email address and has "no pertinent information."
     *Id*. She also states that Lisa@babybeminematernity.com has not yet been created and that
27   Isabelle@babybeminematernity.com "was created years ago but has not been used almost since
     the time it was created." *Id*. ¶ 4. Plaintiff contends Defendants should have searched for
28   communications that used these other email addresses, as well as an email address referenced on
     Defendants' website, returns@babybeminematernity.com.  Goldberg Reply Decl. ¶ 19.

United States District Court
Northern District of California

1  Tekce stated in her supplemental declaration that all invoices are kept on one of Defendants'

2  computers and they downloaded and produced every invoice that mentioned Belly Bands.  Tekce

3  Supp. Decl. ¶ 20.  According to Tekce, if invoices were missing from Defendants' production, it is

4  because they did not mention Belly Bands.  *Id.*  Defendants' office manager also testified that she

5  "went through invoices and emailed them to Sales at BabyBeMineMaternaity.com for [Tekce] to

6  email to the attorney."  Goldberg Reply Decl., Ex. C at 49-50.  However, Plaintiff suggests that

7  Defendants' computer expert should have searched all five of Defendants' computers for financial

8  documents that may have been deleted.  Reply at 6.  In addition, at the motion hearing Plaintiff's

9  counsel stated that the invoices that were produced still appear to be incomplete and that some of

10  the invoices that were produced show only half of the invoice.

11  **2.  Documents related to Defendants' Amazon Seller account**

12  • **customer communications**

13  As of mid-January 2014, Defendants had only produced "about 15 email communications"

14  between BBM and their customers on their Amazon Seller account, all of which had occurred in

15  the previous thirty days.   See Goldberg Decl., Ex. N (Docket No. 51-14) at p. 53. Previously,

16  Defendants' counsel had informed Plaintiff that all of the responsive Amazon communications

17  had been produced "months ago."  *Id.* at  p. 22.  After Plaintiff sought to obtain the documents

18  directly from Amazon, however, Amazon's counsel informed Defendants' counsel (as well as

19  Plaintiff's counsel) that Amazon maintains customer communications for a period of two years

20  and that sellers have access to those communications.  *Id.* at p. 3 (January 14, 2014 email).

21  Defendants subsequently produced Amazon customer communications going back to the

22  beginning of 2012 but earlier communications no longer existed.   Goldberg Decl., ¶ 9(f) & (g).

23  Thus, approximately six months of communications were lost due to Defendants' failure to timely

24  respond to Plaintiff's requests for production.   Plaintiff further states that it cannot be certain that

25  all responsive Amazon documents have been produced.  *Id.*  Plaintiff has brought a motion to

26  compel against Amazon.com that is currently pending in the Western District of Washington.

27  • **financial documents relating to Amazon sales**

28  According to Plaintiff, "[d]espite the fact that during the entire pendency of this lawsuit

7

United States District Court
Northern District of California

Defendants have had immediate and complete access to all their financial documents regarding sales and disbursements in their Amazon Account, not one of those documents has been produced."  Motion at 6; Goldberg Decl. ¶ 9(i);  *see also* Reply at 5; Goldberg Reply Decl. ¶ 14 ("Plaintiff has been unable to locate a document production by Defendants of financial documents regarding sales and disbursements in Defendants' Amazon Account.").  Plaintiff's counsel states that "[t]hese documents definitely exist because Amazon has provided such documents to Plaintiff, and such documents represent a very significant amount of sales by Defendants." Goldberg Decl. ¶ 9(i). At the motion hearing, Plaintiff's counsel stated that Defendants had produced a document on March 7, 2014 and another on March 10, 2014, which appeared to be reports of Belly Band sales on Amazon.com but that the reports were only partial reports and did not contain any dates.

**3. Documents related to Defendants' 3DCart Store, former server for Defendants' website**

Until sometime in 2012, 3dCart Store hosted Defendants' website.  Goldberg Decl. ¶ 9(c).  At the time the Motion was filed, Defendants had not produced any customer communications, even though communications between Defendants and their customers came through the 3dCart Store account.  Goldberg Decl. ¶ 9 (c) & (d).  Nor had they produced customer comments on Defendants' website, though Plaintiff had obtained some directly from 3dCart.  *Id*., Ex. L. According to Plaintiff, it had also obtained sales information from 3dCart Store, none of which was produced by Defendants.  *Id*. ¶ 9(i).   In her supplemental declaration, Tekce stated that Defendants had reopened their 3dCart Store account in November 2013 and had recovered emails with the term "belly band" for the period November 2009 to December 2012.  Tekce Supp. Decl. ¶ 9.  Defendants did not address the production of sales information from their 3dCart Store Account in their Opposition or supporting declarations.  However, Plaintiff's counsel states in her Reply declaration that just a few days before the Reply was filed, on February 28, 2014, Defendants produced some financial documents for the 3dCart Store Account.  Goldberg Reply Decl. ¶ 15. She states in her declaration that she does not know if this production is complete. Goldberg Reply Decl., ¶ 15.

**4. Customer communications stored by Volusion, current server for Defendants' website**

Defendants' current website is hosted by Volusion.  Reply at 6; Goldberg Reply Decl. ¶ 22.  Volusion stores customer emails for only 30 days, either because of its document retention policy or customer settings.  *Id*.  Defendants did not produce any emails from their website until February 2014 despite earlier statements in response to Defendants' discovery requests that they had made a diligent search and all responsive documents had been produced.  Goldberg Reply Decl. ¶ 22 & Exs. F & G.

**5. Twitter and Facebook**

Tekce testified in her deposition that Defendants' customers could communicate with them via Facebook.  Goldberg Decl., Ex. J at 51.  Tekce also stated in her supplemental declaration that Defendants have had a Twitter account since 2009.  At the time the Motions was filed, Defendants had not produced any customer comments about the Belly Band from Facebook or Twitter.  Goldberg Decl. ¶ 9(b).  In her supplemental declaration, Tekce says that she and Gartner searched BBM's Facebook account by logging in and reviewing messages.  Tekce Supp. Decl. ¶ 14.  Tekce states that "these were all produced." *Id*.  She further states, "I do not believe there was one about belly bands." *Id*.  Similarly, Tekce states that "all tweets were forwarded." *Id*.  It is not clear to whom the tweets were forwarded, however.  Plaintiff's counsel stated in her reply declaration that no tweets had been produced.  Goldberg Reply Decl. ¶ 23.  At the motion hearing, she stated that on January 16, 2014 a "handful" of tweets was produced.

**6. eBay**

In the Motion, Plaintiff asserted that the Tekce January 21 Declaration was inadequate because it did not contain information about how Defendants searched for responsive documents on their eBay account.  Motion at 9.  In the Tekce Supplemental Declaration, Tekce states that she and Gartner searched for email communications for the previous 31 days, which is all the system allows.  Tekce Supp. Decl. ¶ 13.  She states that the comments they found about the Belly Band were produced.  *Id*.  She further states that "BBM currently does not sell belly bands on eBay" and that "BBM only sold a handful of belly bands on eBay in 2012 and, before 2012, [Defendants] had not sold belly bands on eBay since 2007." *Id*.  At the motion hearing, Plaintiff's counsel stated that Defendants had produced two pages relating to their eBay sales but those pages did not

show any comments, even though comments relating to the Belly Band can be seen on eBay. Plaintiff has subpoenaed responsive documents directly from eBay; counsel estimated that Plaintiff would receive documents from eBay in about a month.

**7. WalMart**

Plaintiff states in the Motion that Defendants have not produced customer reviews on the Walmart website about Defendants' Belly Band. Goldberg Decl. ¶ 9(e).  Plaintiff provides copies of some comments that were posted on the Walmart website and which Defendants did not produce. *Id*., Ex. M.

**8. Hand-Written Notes and Defective Belly Bands**

On February 26, 2014, Plaintiff deposed Defendants' office manager, Michel Klimzcak. Goldberg Reply Decl., Ex. C.  Klimzcak testified that sometime in the past two years she had received a shipment of white Belly Bands that had been returned with handwritten notes on the packing slips saying "stitching coming undone" and "stitching unraveling." *Id*. at 89.  According to Klimzcak, she threw away the handwritten notes and disposed of the bands. *Id*.  Klimzcak also testified that when Belly Bands are returned they are either thrown away (if they are defective or if "somebody ripped them up"), donated (if there is only a slight defect) or ironed and put back in the package for resale (if the band is clean and is not defective). *Id*. at 70-73.   In its Reply brief, Plaintiff cites the defective bands and the handwritten notes as additional responsive evidence that Defendants have failed to produce. Reply at 1. However, the December 20 Order only refers to *document* requests and none of the specific requests listed in the Order asks Defendants to produce defective and/or returned Belly Bands. Thus, Defendants' failure to preserve defective or returned Belly Bands does not necessarily constitute a violation of the Court's Order even if Defendants had an obligation to produce them.

**9. Communications with Retail Customers**

In the Motion and the Reply, Plaintiff contends Defendants have failed to produce all responsive communications between Defendants and their retail customers.  Motion at 6; Goldberg Decl. ¶ 9(h); Reply at 4; Goldberg Supp. Decl. ¶ 12.  In her supplemental declaration, Tekce states that all responsive communications with manufacturers have been produced, Tekce

1  Supp. Decl. ¶ 18, but Defendants do not address Plaintiff's contention that Defendants have failed

2  to produce all responsive communications with retailers.

3  **10.  Financial Records**

4  In the Motion, Plaintiff contends Defendants' production of financial documents was

5  inadequate because "all that had been produced [were] tax returns, a handful of purchase orders, a

6  smattering of incomplete invoices . . . , a list of 'website sales 11/29/09-12/5/12' that do not

7  appear to have been produced in the manner maintained in the ordinary course of business, and

8  some bank records for 2012 and 2013."  Motion at 6-7; Goldberg Decl. ¶ 9(i).  As discussed

9  above, Plaintiff asserted Defendants should have produced financial documents from its Amazon

10  Seller account and sales information from its 3dCart Store.  *Id*.  Plaintiff also stated that "only very

11  limited financial documents for 2010, 2011 and 2013 have been produced, and no financial

12  documents for the years 2006 - November 29, 2009 have been produced (other than tax returns

13  with no supporting documentation)."  *Id*.  According to Plaintiff, while Defendants could have

14  obtained missing information and invoices from their retailers, they failed to do so.  *Id*.  The only

15  effort they made to obtain this information from third parties was to instruct their CPA to produce

16  BBM's entire file.  *Id*.

17  In the Tekce supplemental declaration she stated that Defendants produced all of the bank

18  statements in Defendants' possession and instructed their CPA, Carl Casthano, to "provide any

19  BBM documents he has."  Tekce Supp. Decl. ¶ 20.  Tekce also noted that Plaintiff had served Mr.

20  Casthano with a deposition and records subpoena.  *Id*.  Finally, Tekce stated that Defendants had

21  produced all invoices for Belly Bands on their computers.  *Id*.

22  In the Reply brief, Plaintiff asserted that Defendants still had not complied with the Court's

23  Order as to the production of financial documents.  Reply at 4-5.  First, as discussed above,

24  Defendants still had not produced records of sales for the Amazon Seller account.  Goldberg Reply

25  Decl. ¶ 14.  Second, although Defendants produced sales documents for 3dCart on February 28,

26  2014, Plaintiff did not know if the production was complete, as discussed above.  *Id*., ¶ 9. Third, at

27  his deposition Defendants' CPA testified that the bank records for 2009 to 2012 that he used to

28  prepare Defendants' taxes had been returned to Defendants.  *Id*.  ¶ 13 & Ex. D.  To the extent that

United States District Court
Northern District of California

11

1  Defendants apparently no longer have these bank statements (which were not produced to

2  Plaintiff), Plaintiff asserts Defendants should have obtained these statements from their bank to

3  produce in this litigation.  Reply at 4-5.   Fourth, Plaintiff argued for the first time in its Reply

4  brief that Defendants should have produced UPS freight and customs documents, which could also

5  contain relevant financial information.  Reply at 5; Goldberg Reply Decl. ¶ 16.  Finally, Plaintiff

6  points to testimony by Klimzcak at her deposition that Defendants have a PayPal account and

7  assert that Defendants should have produced financial records from PayPal.  *Id*. at 5;  Goldberg

8  Reply Decl., ¶ 17 & Ex. C at 118.

9  **III.    ANALYSIS**

10     **A.    Legal Standard**

11       Federal courts have the authority to sanction litigants for discovery abuses both under the

12  Federal Rules of Civil Procedure and pursuant to the court's inherent power to prevent abuse of

13  the judicial process.  *Network Appliance, Inc. v. Bluearc Corp*., 2005 WL 1513099. at *2

14  (N.D.Cal., June 27, 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *In re*

15  *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.1986)).  Rule 16(f) of the Federal Rules of Civil

16  Procedure allows a court to order sanctions where a party or its attorney fails to obey a pretrial

17  order.  Federal Rule of Civil Procedure 37(b)(2)(A) specifically addresses sanctions that may be

18  imposed on a party that has failed to comply with a discovery order, including striking the

19  pleadings in whole or in part, claim or issue preclusion, dismissal, and entry of default judgment.

20  Fed. R. Civ. P. 37(b)(2).  In addition, Rule 37(b)(2)(C) provides that where a party fails to comply

21  with a discovery order, "the court *must* order the disobedient party, the attorney advising that

22  party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

23  unless the failure was substantially justified or other circumstances make an award of expenses

24  unjust."  Fed.R. Civ. P. 37(b)(2)(C) (emphasis added).

25       Sanctions are permissible under Rule 37 when a party fails to comply with a court order,

26  regardless of the reasons.  *See Societé Internationale Pour Participations Industrielles et*

27  *Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ("[T]he willfulness or good faith of [a

28  party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the

United States District Court
Northern District of California

District Court might follow in dealing with [the party's] failure to comply."); *David v. Hooker, Ltd.*, 560 F.2d 412, 420 (9th Cir.1977) ("in view of the possibility of light sanctions, even a negligent failure [to obey an order] should come within" Rule 37); *Chicult v. U.S.*, 4 F.3d 1322, 1320 n. 23 (5th Cir.1993) (citing *Societé* for the proposition that "the type of conduct displayed by a party ha[s] no bearing on whether sanctions should be imposed, but only on the type of sanctions imposed").  An imposition of sanctions under Rule 37 does not require willfulness, fault, or bad faith unless the sanction is dismissal.  *Varney v. California Highway Patrol*, WL 2299544, at *2 (N.D.Cal., May 24, 2013) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001)).  However, "[i]n order for the sanction to comport with due process, the sanction imposed under Rule 37 must be specifically related to the particular claim which was at issue in the order to provide discovery." *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990) (citing *Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1342 (9th Cir.1985)).  Further, Rule 37 requires that the sanction must be "just."  *Ins. Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

"When a court excludes evidence under Rule 37, the court should do so only where there is a finding of prejudice to the nonoffending party."  *Life Technologies Corp. v. Biosearch Technologies, Inc.*, 2012 WL 1600393, at *11 (N.D.Cal., May 7, 2012) (citing *Rooney v. Sierra Pacific Windows*, 2011 WL 2149097, at * 3 (N.D.Cal., June 1, 2011) (Koh, J.) ("Evidentiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless."); *Allergan, Inc. v. Sandoz Inc.*, 2011 WL 2563238, at *3 (E.D. Tex. June 28, 2011) (striking an expert report and precluding that expert from testifying at trial where the party presenting the expert caused "extreme prejudice" by inadvertently disclosing confidential information to a witness not designated on its list of potential experts)).

In cases where there has been spoliation of evidence, the Court also may impose sanctions under its inherent power.  *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D.Cal., 2008).  The three types of sanctions courts may impose, in order of least severe to most severe, are: 1) the court can instruct the jury that "it may infer that evidence made unavailable by a

party was unfavorable to that party"; 2) "a court can exclude witness testimony based on the spoliated evidence"; and 3) the court can "dismiss the claim of the party responsible for the spoliation." *Id.* (citations omitted).   In determining what sanctions are appropriate in cases of spoliation, courts consider: "1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F.Supp.2d 976, 992 (N.D.Cal., 2012) (citing *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. at 563).   "[T]he choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Id.*

In evaluating the prejudice that results from a party's failure to comply with a discovery order or the destruction of evidence, courts should consider whether the actions of the party that destroyed evidence "impair [its opponent's] ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana International Corp.*, 913 F.2d at 1412.

### B.   Monetary Sanctions

Defendants assert that there is "no evidence" that they violated the December 20 Order "let alone acted in bad faith."  Opposition at 3.  At most, they contend, they were late in complying with the Court's Order because they retained a computer specialist after the 30-day compliance period had passed.  *Id.* at 4.  They assert that their late compliance was substantially justified, however, because they are a small company – essentially the two individuals who run the company "with a few employees" – and Defendants "could not commence their search efforts" until Gartner and Tekce returned from Europe in January. *Id.*   According to Defendants, they did "everything within their power to comply with this Court's Discovery Order." *Id.*  The Court finds that Defendants violated the December 20 Order without substantial justification and therefore, that the imposition of monetary sanction is mandatory under Rule 37.

The Court ordered that Defendants comply with its discovery order within thirty days. Defendants did not do so.  Their only excuse is that Gartner and Tekce had planned family vacations in Europe over the holidays.  Defendants offer no explanation for their failure to alert

United States District Court
Northern District of California

United States District Court
Northern District of California

the Court that these plans would impair their ability to comply with its order; nor did they request an extension of the deadline.  They did not instruct their office manager to search for responsive documents while they were in Europe.  Goldberg Supp. Decl. ¶ 10 & Ex. C at 8-9.  Further, when Gartner and Tekce did return from Europe, it apparently took them two to three weeks to determine that they did not have the skills to access deleted emails on their computers and therefore needed to retain an expert.  It is not clear why this could not have been determined immediately upon their return from Europe.  Even more troubling is the fact that even *after* the computer expert was retained (several days after Defendants were required to have complied with the Court's order), no responsive documents were produced for almost an entire month.  Much of this delay is attributed to the fact that the legal assistant to Robert Levin (who is not counsel of record in this case) was ill and could not Bates stamp the documents for some period of time. But counsel is silent as to why the documents had to be Bates stamped by that particular individual. Given that Defendants were already in violation of the Court's order, Defendants' failure to expedite the production of documents, once obtained, is more than a little surprising, especially as Plaintiff had a series of depositions planned to occur in Connecticut in late February.

In sum, Defendants' failure to comply with the requirement in the Court's December 20 Order that they produce all responsive documents within thirty days was not substantially justified.[7]  Nor is it unjust to award monetary sanction given that the delay caused Plaintiff  to incur significant attorneys' fees and costs associated with: 1) efforts to obtain responsive documents through subpoenas to third parties; 2) the completion of depositions in Connecticut for which Plaintiff's counsel was unable to adequately prepare because of the late production; and 3) the filing of the instant motion. Consequently, Plaintiff is entitled to an award of monetary sanctions under Rule 37(b)(2)(C).

The Court awards monetary sanctions as follows: 1) attorneys' fees and costs incurred in connection with the sanctions motion through the date of the Motion hearing, in the amount of

---

[7] Although Defendants' failure to comply with the thirty-day deadline in the Court's order is, by itself, a sufficient basis for imposing monetary sanctions under Rule 37(b)(2)(C), Defendants' efforts to comply also fell short in other ways, as discussed further below.

15

$20,443.55;[8] and 2) costs (including travel costs) incurred in connection with re-depositions Plaintiff must conduct as a result of Defendants' failure to comply with the Court's Order, in an amount to be determined at the close of discovery.  Further, while Plaintiff shall initially bear the cost of retaining the forensic computer expert, in the event the expert's inspection demonstrates that relevant, nonprivileged, information has been unreasonably withheld or that there has been spoliation of relevant evidence, Plaintiff may bring a motion seeking to shift these costs to Defendants.

### C.   Disclosure of Hard Drives, Access to Email and Other Accounts

Plaintiff requests that the Court "[c]ompel disclosure of all of Defendants' hard drives and provide Plaintiff (and their forensic vendor) with full and immediate access to Defendants' Amazon Account and all of Defendants' email accounts." Motion at 14.  The Court finds that Plaintiff has made a sufficient showing to warrant the requested relief subject to an appropriate protocol that will protect any privileges or privacy interests of Defendants.

### 1.  Hard Drives

The production of hard drives is a remedy that is typically ordered only in cases that "involve an extreme situation where data is likely to be destroyed or where computers have a special connection to the lawsuit." *Memry Corp. v. Kentucky Oil Technology, N.V.*, 2007 WL 832937 (N.D. Cal. March 19, 2007);  *see also Cefalu v. Holder*, 2013 WL 4102160, at *1 (N.D. Cal. Aug. 12, 2013) ("[b]ecause personal computers contain highly personal and sensitive material courts generally require a heightened showing of good cause").  A strong showing of spoliation of relevant evidence in the instant action would likely meet this standard.  *See Cefalu*, 2013 WL 4102160, at *1.  However, even where a party demonstrates that "serious questions exist both as to

---

[8]This amount consists of: 1) $14,871.60 in attorneys' fees for 20 hours of work on the Motion, 26.6 hours on the Reply and 2 hours to prepare for and attend the Motion hearing; *see* Goldberg Decl. ¶ 13; Goldberg Reply Decl. ¶ 32 ; 2) $2,601 in attorneys' fees incurred in connection with Plaintiff's Motion to Compel production of documents from third-party Amazon.com when Defendants failed to produce customer communications received through their Amazon account; *Id*. ¶ 14; 3) $2,205 in attorneys' fees incurred by local counsel in Washington, Alan Middleton, in connection with Amazon.com motion to compel; *Id*. ¶ 15; and 4) $765.95 in costs incurred in subpoenaing responsive documents from third-party vendors Amazon.com, Quidsi, 3D Cart Store, Mageno, Inc. Volusion and Soft Layer. Goldberg Reply Decl. ¶ 30.

United States District Court
Northern District of California

1    the reliability and the completeness of materials produced in discovery," an order compelling

2    disclosure to a forensics expert is only appropriate where there is a protocol in place that will

3    protect against unwarranted invasion of privacy. *See Advante International Corp. v. Mintel*

4    *Learning Technology*, 2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) (declining to permit

5    inspection of hard drives until parties worked out a protocol for the inspection).  Because access to

6    personal email is similar to production of a hard drive in terms of its invasiveness, the Court

7    assumes that similar standards apply.

8         The record in this case shows that there is a serious question as to whether Defendants

9    have produced all responsive documents stored on their hard drives and further, that there is real

10   danger that evidence may be destroyed.  Defendants have repeatedly represented to Plaintiff that

11   they have produced all responsive documents stored on their computers, only to later reveal that

12   they failed to produce documents of which they were aware or should have been aware.  They

13   have made false statements about their efforts, such as the statement that they spent weeks

14   reviewing thousands of emails with their office manager, who says she never reviewed any emails.

15   They have stated that no responsive emails were deleted during the time of this litigation when the

16   overwhelming evidence shows that they were (and that Tekce had no reasonable basis for

17   believing that they were not).  They retained a computer expert but asked him to search only two

18   of their five computers (and it is not even clear which ones).  Tekce stated in her declaration that

19   Defendants' computer expert had pulled emails from the server when in fact he had not.   They

20   used search terms that were so narrow as to be obviously deficient.  In short, Defendants have

21   knowingly and flagrantly failed to comply with the Court's Order as to documents stored on their

22   hard drives. The Court finds that this case is one of the extreme cases where production of

23   Defendants' hard drives is necessary to avoid the possibility that relevant documents will continue

24   to be deleted and to ensure that all responsive documents are produced.[9]

25   _____

26   [9] In its minute order, issued on the day of the Motion hearing, the Court ordered that Defendants
     produce "all hard drives and electronic storage media in their custody and control to a computer

27   forensics expert to be designated by Plaintiff, who may search for responsive documents that have
     been deleted or were not produced as well as information regarding the circumstances of any

28   deletions (including the date the document was deleted and the user who deleted the document)."
     *See* Docket No. 64.  The Court further ordered that the parties' production of hard drives and any

17

## 2. Access to email, Amazon, Twitter, Facebook and eBay Accounts

Plaintiff also requests access to Defendants' various accounts. As discussed above, the record in this case suggests that there is reason for serious concern as to whether Defendants have met their discovery obligations as to production of responsive documents from their email accounts, Amazon, Facebook, Twitter and eBay accounts. Therefore, as stated in the Court's minute order, Plaintiff's expert shall be given access to "all email accounts for all five email addresses listed in Plaintiff's moving papers" as well as Defendants' accounts (both those of the business and those of the individual defendants) on Amazon.com, Facebook, Twitter and eBay, subject to the protocol that has been agreed upon by the parties. *See* Docket No. 67.

## D. Issue Preclusion Sanctions

In addition to the problems discussed above, Plaintiff points to a host of other deficiencies regarding Defendants' responses to Plaintiff's discovery requests and their compliance with the December 20 Order. According to Plaintiff, it has been so severely prejudiced by Defendants' lack of compliance with the Court's order that the appropriate remedy is to prohibit Defendants from opposing Plaintiff's claims that Defendants' Belly Band holds up skirts and jeans, from opposing Plaintiff's damages calculation, or from introducing any opposing evidence with regard to the damages calculation in this case. The Court finds that Plaintiff has not made a sufficient showing to warrant the entry of the requested preclusion sanctions, at least at this stage of discovery.

As discussed above, preclusion sanctions are a harsh remedy that should be imposed only in extreme circumstances. In determining what sanctions are appropriate, the Court must consider whether Defendants' conduct has impaired Plaintiff's "ability to go to trial or threaten[s] to interfere with the rightful decision of the case." *Adriana International Corp.*, 913 F.2d at 1412. In light of the documents Plaintiff has obtained directly from third parties and the documents Plaintiff may recover from Defendants' hard drives and through obtaining access to Defendants' various accounts, the Court finds that the sanctions requested by Plaintiff as to the issues of

---

other electronic storage media would be subject to a protocol to be agreed upon by the parties. That protocol was submitted by the parties on March 25, 2014 and approved by the Court on March 27, 2014.

United States District Court
Northern District of California

damages and whether Defendants' product holds up pants and skirts are not warranted at this point.  Therefore, the Court denies Plaintiff's request for issue preclusion sanctions without prejudice.  The Court also notes that it will consider instructing the jury that it can draw an adverse inference based on Defendants' failure to produce specific types of evidence if Plaintiff is able to make a showing that such evidence was knowingly destroyed and that the absence of such evidence actually threatens its ability to obtain a just outcome in this litigation.

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. Defendants are ordered to pay, within thirty (30) days of the date of this Order, $20,443.55 in monetary sanctions for attorneys' fees and costs incurred through the date of the Motion hearing. The Court will also award costs (including travel costs) incurred in connection with re-depositions, as set forth in its minute order.  In addition, subject to the protocol approved by the Court on March 27, 2014, Defendants shall produce all hard drives and any other electronic storage media, and provide Plaintiff's experts with access to Defendants' various accounts, as specifically set forth in the Court's minute order.  The Motion is DENIED without prejudice as to the issue preclusion sanctions requested by Plaintiff.

**IT IS SO ORDERED.**

Dated:  April 1, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California